FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

97 FEB 18 AM 9: 43

U.S. DISTRICT COURT
N.D. OF ALABAMA

MORRIS PLAISANCE,                     }
                                      }
        Plaintiff,                    }
                                      }        CIVIL ACTION NO.
    vs.                               }
                                      }        CV-96-AR-2587-S
WILLIAM PERRY, SECRETARY,             }
DEPARTMENT OF DEFENSE,                }
                                      }
        Defendant.                    }
                                      }

**ENTERED**

FEB 1 8 1997



### MEMORANDUM OPINION

The court has before it a motion for summary judgment[1] by

defendant, William Perry.  For the reasons stated below,

defendant's motion for summary judgment is due to be granted and

the action of plaintiff, Morris Plaisance ("Plaisance"), is due to

be dismissed.  Plaintiff's retaliation claim, insofar as it relates

to plaintiff's October 10, 1996, termination by defendant, is due

to be dismissed without prejudice.  All of plaintiff's other claims

---

[1]Pursuant to this court's January 16, 1997, order defendant's motion to
dismiss was deemed merged with his Rule 56 motion that is currently before this
court.

Pursuant to Rule 12(b)(6), the court construes the motion to dismiss
as one for summary judgment.  When the movant submits a 12(b)(6)
motion and "matters outside the pleading are presented to and not
excluded by the court, the motion shall be treated as one for summary
judgment and disposed of as provided in Rule 56 . . . ." Fed.R.Civ.P.
12(b)(6).

*Thompson v. West*, 883 F. Supp. 1502, 1504 n.1 (M.D. Ala. 1995).  This court
considered affidavits and evidence submitted by defendant.

1

are due to be dismissed with prejudice.[2]

## A. Pertinent Facts

Plaintiff, a male, filed an action in this court alleging sex and disability discrimination and retaliation.   The facts of the present controversy were set forth by the Equal Employment Opportunity ("EEO") manager in his review of plaintiff's complaints.   These EEO complaints were classified as complaints numbered XK-96-018, XK-96-019, XK-96-025, and XK-96-038.   The complaints arise from the allegedly preferential treatment given by plaintiff's superiors to  two women, Jan Bishop and Brenda Conway who worked with plaintiff. The EEO manager's synopses, to which plaintiff does not object, are set forth below.

### 1. XK-96-018

Attached to his EEO complaint XK-96-018, that alleged sex discrimination and reprisal, plaintiff attached a six page memo detailing alleged incidents of sex discrimination. (Def. Ex. 1). These incidents were each addressed by an EEO  manager in his July 30, 1996, dismissal/acceptance letter.   They were listed as follows:

---

[2]Plaintiff also broadly pleads in his complaint that there existed a conspiracy to violate his constitutional rights, namely equal protection. The court construes these claims as redundant to the statutory claims discussed herein. These constitutional claims are therefore similarly due to be dismissed with prejudice.

(a) On February 20, 1996 and March 16, 1996, Ms. Jan Bishop did not report to work at her permanent duty station in DCMC Birmingham, AL, and no disciplinary action was taken by Mr. Pacheco or Mr Shratter.

(b) On January 18, 1996, January 23, 1996, and February 5, 1996, Ms. Jan Bishop worked in the field office in Gadsden, AL, rather than her permanent duty station in DCMC Birmingham, AL, and no disciplinary action was taken by Mr. Pacheco or Mr. Shratter.

(c) On February 21, 1996, and February 22, 1996, Ms. Jan Bishop was 15-20 minutes tardy and no disciplinary action was taken by Mr. Pacheco or Mr. Shratter.

(d) Dates unknown, Ms. Jan Bishop's name and work location was not included on a monthly schedule of employees working outside the DCMC Birmingham work site.

(e) Dates unknown, Mr. Pacheco, Ms. Bolton and Mr. Shratter gave Ms. Jan Bishop contract review assignments near her home in other than her position description of a Cost Price Analyst.

(f) Dates unknown, but approximately one and one-half years ago, Mr. Pacheco, Ms. Botlton, and Mr. Shratter authorized Ms. Jan Bishop a government owned vehicle, when needed, from the Gadsden office, a procedure which is not offered to other employees.

(g) Dates unknown, Mr. Pacheco, Ms. Bolton, Mr. Simpson, and Mr. Shratter authorized Ms. Jan Bishop to keep a government owned vehicle at her home when she would leave the next day for an official overnight TDY travel.

(h) Dates unspecified, Mr. Pacheco, the DCMC North Chief, and Mr. Jackson [plaintiff's supervisor], caused [plaintiff's] work time to be 100% accountable, by requiring [him] to sign out when [he] perform[ed] personal errands, and by requiring [him] to make up the time later in the day.

(i) Dates unspecified, Morris Plaisance and Jim Brown

3

from the DCMC Birmingham office [had] to answer Ms. Bishop's phones while Ms. Bishop [was] in the Gadsden office.

(j) Dates unspecified, when Ms. Bishop [used] her POV for official travel, documentation of the POV authorization [was] not present.

(k) On dates unspecified, no documentation exist[ed] to account for Ms. Bishop's work hours.

(l) Dates unspecified, but more than 45 days prior to [plainitff's] initial contract with a counselor, Jim Brown and Major Mancuso gave [plaintiff] short suspense work assignments such as pre-award reports, pricing reports, and progress payment reports, which were unable to be assigned to Ms. Bishop due to her absence from the work site.

(m) On approximately April 9, 1995, [plaintiff was] detailed, against [his] will, to the DCMC Birmingham Contract Administration section for twelve months of cross-training.

(n) On February 8, 1996, Ms. Bishop was allowed by Mr. Shratter, and Jim Brown, Contracting Operations Chief, to not report to work at DCMC Birmingham prior to TDY to Hughes Aircraft Mississippi (HAMI), Forest Mississippi, instead of being required to report to DCMC Birmingham to obtain a government owned vehicle (or to get permission to use a POV) before traveling to HAMI.

(o) On December 6, 1995 [plaintiff was] notified by the DCMDS-HS that [he was] found ineligible to apply for the position of Contract Operations Area Supervisor/GS-1103-13 (JOA A-65-95), due to the fact that "Your application does not reflect a full year of specialized experience at the GS-12 level", despite [plaintiff's] assertion that DLAR 1402.3, par V C2c indicates that 30% disabled veterans who have been converted under 5 Code of Regulations do not have time in grade requirements.

(p) On February 29, 1996, Ms. Brenda Conway told

4

[plaintiff] that she was promised a position in the
Mission Support Office section as the acting supervisor,
and that after Ms. Conway filed an EEO complaint and
subsequently dropped the same, she was given a GS-12
position.

(Def. Ex. 6).

## 2. XK-96-019

Attached to his EEO complaint XK-96-019, alleging sex
discrimination, plaintiff attached an account and description of
the alleged incidents that he felt were discriminatory. These
incidents were referenced by the EEO manager in his July 30, 1996,
dismissal/acceptance letter. They are as follows:

(a) On March 21, 1996 Mr. Jackson, [plaintiff's
supervisor], told Evelyn Anderson (a witness to the March
19, 1996 incident wherein [plaintiff] allegedly touched
Ms. Zealy's arm), to not tell anyone of her corroboration
of [plaintiff's] version of the incident.

(b) On March 21, 1996 Mr. Jackson gave [plaintiff] a
written counseling regarding the March 19, 1996 incident
at [plaintiff's] GNBA workstation wherein [plaintiff]
allegedly touched Ms. Zealy's arm.

(c) On March 21, 1996 Mr. Jackson accused [plaintiff] of
harassing people, dates unspecified, by asking other
employees for copies of official government documents
such as Ms. Bishop's time sheets and backup information
regarding Ms. Conway's promotion, by keeping records on
other employees, and Mr. Jackson accused [plaintiff] of
taking files and/or official government documents, dates
unspecified, which did not belong to [plaintiff].

(d) On March 21, 1996, [plaintiff's supervisor], Mr.
Jackson, and Mr. Pacheco, the DCMC North Chief, went to
lunch together.

(e) On March 21, 1996 Mr. Jackson did not find it credible that Ms. Zealy was the aggressor regarding the March 19, 1996 incident at [plaintiff's] GBNA workstation wherein [plaintiff] allegedly touched Ms. Zealy's arm, nor that [plaintiff was] defending [himself] from Ms. Zealy's aggressive position of her body over [plaintiff] and in front of [his] computer.

(Def. Ex. 7).

### 3. XL-96-025

Attached to his Formal Complaint of Discrimination XK-96-025, alleging disability discrimination and reprisal, plaintiff attached an account and description of the alleged incidents that he felt were discriminatory (Def. Ex. 3). These incidents were referenced by the EEO manager in his July 30, 1996, dismissal/acceptance letter. (Def. Ex. 8). The sole incident alleged in this complaint by plaintiff, identified in paragraph (a) of the EEO manager's dismissal/acceptance letter, regarded plaintiff receiving a lower than deserved performance appraisal as a result of his filing complaints.

### 4. XL-96-038

Attached to his Formal Complaint of Discrimination XK-96-038, alleging disability discrimination, sex discrimination and reprisal, plaintiff attached an account and description of the alleged incidents that he felt were discriminatory. (Def. Ex. 9). These incidents were referenced by the EEO manager in his July 30,

6

1996, dismissal/acceptance letter. (Def. Ex. 10). They are as follows:

(a) A criminal investigation of [plaintiff] was initiated, on or about June 10, 1996, at DCMC Birmingham.

(b) On June 24, 1996, Ms. Zealy made what [plaintiff] consider[ed] to be false accusations to Col. Pulscher that [plaintiff] assaulted her during a June 24, 1996 incident at an elevator at DCMC Birmingham.

(c) On June 24, 1996, [plaintiff was] informed that [he] was on administrative leave and [was] escorted out of the building, and told not to come back unless and until [] notified.

(d) On June 1, 1996, Jan Bishop provided what [plaintiff] consider[ed] to be false information to Col. Pulscher regarding [plaintiff's] alleged actions.

(e) [Plaintiff] did not receive a response to [his] E-mail, sent on or about June 10, 1996, which requested help in providing training to other administrators in Cost-Price analysis work.

(Def. Ex. 10).

### B. Summary Judgment Standard

Rule 56 states, in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

F. R. Civ. P. 56(c). As stated by the Eleventh Circuit, "[s]ummary judgment is appropriate where there exists no genuine issue of

7

material fact and the movant is entitled to judgment as a matter of law." <u>Turnes v. AmSouth Bank, N.A.</u>, 36 F.3d 1057, 1061 (11th Cir. 1994).

### C. Legal Analysis

#### 1.  Discharge and Proposed Discharge

Plaintiff filed his complaint in this court on October 2, 1996.  This complaint, amidst other allegations, claims that plaintiff was subjected to retaliation for complaining of alleged sexual discrimination, sexual harassment, and disability discrimination, in the form of a proposal to terminate plaintiff's employment.  Plaintiff was not in fact terminated until October 10, 1996, after which plaintiff correctly filed a complaint with the Merit System Protection Board ("MSPB") pursuant to 5 U.S.C. § 7702. That section provides:

> (e)(1) Notwithstanding any other provision of law, if at any time <u>after</u>--
>
> ***
>
>> (B) the 120th day following the filing of an appeal with the Board under subsection (a)(1) of this section, there is no judicially reviewable action (unless such action is not as the result of the filing of a petition by the employee under subsection (b)(1) of this section) . . .
>
> ***
>
> an employee shall be entitled to file a civil action to the same extent and in the same manner as provided in section 717(c) of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16(c)) . . . .

5 U.S.C. § 7705(e)(1) (emphasis added). Plaintiff concedes that he did not exhaust his administrative remedies on the retaliation claim before filing in this court. Nevertheless, he argues that "all of his claims should be tried in a single action rather than separately . . . ." (Plaintiff's Response to Motion to Dismiss at 1). The normative question of whether the claims should be heard together is irrelevant. They simply cannot be combined at this stage. Plaintiff's complaint, insofar as it relates to his dismissal from employment by defendant, is due to be dismissed without prejudice to refiling at the proper time.

## B. Timeliness of Remaining Claims

Defendant asserts, and plaintiff concedes that some of plaintiffs claims were filed outside the time period prescribed by the relevant regulations. "A federal employee must timely exhaust administrative remedies before filing an employment discrimination suit under Title VII." *Thompson v. West*, 883 F. Supp. 1502, 1506 (M.D. Ala. 1995)(citing *Brown v. General Serv. Admin.*, 425 U.S. 820, 829-32, 96 S. Ct. 1961, 1966-68 (1976)). "If an employee fails to exhaust his or her administrative remedies under Title VII, the court lacks subject matter jurisdiction to entertain the lawsuit." *Id.* (citing cases).

9

Pursuant to its proper rule-making function, the EEOC has promulgated certain mandatory regulations to which a federal employee must adhere before filing a Title VII complaint in district court. *Id*. at 1506-07 (citing cases). Failure to comply with these regulations has regularly and properly resulted in granting of summary judgment in favor of the government or dismissal of the case for failing to state a claim upon which relief can be granted. *Id*. (citing cases). In the present case, the relevant EEOC regulation reads:

> (a) Aggrieved persons who believe they have been discriminated against on the basis of race, color religion, sex, national origin or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.
>
> > (1) An aggrieved person <u>must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action</u>.
> >
> > (2) The agency or the Commission shall extend the 45 day time limit in paragraph (a)(1) of this section when <u>the individual shows</u> that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered

10

sufficient by the agency or the Commission.

29 C.F.R. § 1614.105(a)(1)-(2)(1997)(emphasis added).

Plaintiff filed certain complaints with a counselor more than 45 days after the relevant events had occurred. Specifically, plaintiff's complaint XK-96-018, filed March 13, 1996, was dismissed by the EEO manager as not timely. The allegations contained in the XK-96-018 dismissal letter as paragraphs (d)-(m) and (o) were properly dismissed because plaintiff did not follow the requisite procedures of § 1614.105(a). This court will similarly dismiss these claims with prejudice insofar as the court construes them to be contained in plaintiff's complaint.

Plaintiff offers no evidence that he was unaware of the time limitations for filing or that he was prevented from filing with a counselor. Plaintiff broadly claims that the time period should be equitably tolled because "plaintiff was repeatedly told that his claims with regard to disparate treatment, were valid and that corrections had been made to eliminate the disparate treatment" and because "plaintiff was transferred in an effort to prevent him from observing the continuation of the female employee's preferential treatment." There is no evidence of the first contention, and if there were such evidence it would not fall within § 116.105(a)(2)'s strictures. As to the second contention, such alleged action

11

should have prompted plaintiff to contact a counselor rather than stood in his way.

As to the failure to promote claim, plaintiff agrees that he did not file an informal complaint within 45 days. However, he suggests, without pointing to any position, that he was denied consideration for some other position. The court can find no reference to said denial of a specific position anywhere in the evidence submitted by defendant (plaintiff has submitted no evidence save a partial copy of a correspondence by the United States Office of the Special Counsel). Insofar as defendant requests dismissal with prejudice of the claims contained in the EEO complaint XK-96-018, and denied by the July 30, 1996, letter as untimely (those allegations contained in paragraphs (d)-(m) and (o)), defendant's motion is due to be granted. If there was some other job for which plaintiff was qualified, and he has not brought it to the attention of the counselor by now, he is surely beyond the 45 day limit.

For the aforementioned reasons those allegations of plaintiff's complaint that relate to events or complaints in paragraphs (d)-(m) and (o) of the EEO July, 30, 1996, letter, and by implication contained in his complaint, will be dismissed with prejudice as untimely.

12

## C. Claims Cognizable under Title VII

Defendant next argues that even if all of the allegations upon which plaintiff based his claims of discrimination were true that none of them amount to an adverse personnel action cognizable under Title VII against the Government. Therefore, said claims are due to be dismissed. The remaining allegations, as set forth by the EEO manager and in plaintiff's EEO complaints and incorporated into the broader complaint in this court are as follows:

(1) From the XL-96-018 complaint:

(a) On February 20, 1996 and March 16, 1996, Ms. Jan Bishop did not report to work at her permanent duty station in DCMC Birmingham, AL, and no disciplinary action was taken by Mr. Pacheco or Mr Shratter.

(b) On January 18, 1996, January 23, 1996, and February 5, 1996, Ms. Jan Bishop worked in the field office in Gadsden, AL, rather than her permanent duty station in DCMC Birmingham, AL, and no disciplinary action was taken by Mr. Pacheco or Mr. Shratter.

(c) On February 21, 1996, and February 22, 1996, Ms. Jan Bishop was 15-20 minutes tardy and no disciplinary action was taken by Mr. Pacheco or Mr. Shratter.

(n) On February 8, 1996, Ms. Bishop was allowed by Mr. Shratter, and Jim Brown, Contracting Operations Chief, to not report to work at DCMC Birmingham prior to TDY to Hughes Aircraft Mississippi (HAMI), Forest Mississippi, instead of being required to report to DCMC Birmingham to obtain a government owned vehicle (or to get permission to use a POV) before traveling to HAMI.

(p) On February 29, 1996, Ms. Brenda Conway told [plaintiff] that she was promised a position in the

Mission Support Office section as the acting supervisor, and that after Ms. Conway filed an EEO complaint and subsequently dropped the same, she was given a GS-12 position;

(2) From the XL-96-019 complaint:

(a) On March 21, 1996 Mr. Jackson, [plaintiff's supervisor], told Evelyn Anderson (a witness to the March 19, 1996 incident wherein [plaintiff] allegedly touched Ms. Zealy's arm), to not tell anyone of her corroboration of [plaintiff's] version of the incident.

(b) On March 21, 1996 Mr. Jackson gave [plaintiff] a written counseling regarding the March 19, 1996 incident at [plaintiff's] GNBA work station wherein [plaintiff] allegedly touched Ms. Zealy's arm.

(c) On March 21, 1996 Mr. Jackson accused [plaintiff] of harassing people, dates unspecified, by asking other employees for copies of official government documents such as Ms. Bishop's time sheets and backup information regarding Ms. Conway's promotion, by keeping records on other employees, and Mr. Jackson accused [plaintiff] of taking files and/or official government documents, dates unspecified, which did not belong to [plaintiff].

(d) On March 21, 1996, [plaintiff's supervisor], Mr. Jackson, and Mr. Pacheco, the DCMC North Chief, went to lunch together.

(e) On March 21, 1996 Mr. Jackson did not find it credible that Ms. Zealy was the aggressor regarding the March 19, 1996 incident at [plaintiff's] GBNA workstation wherein [plaintiff] allegedly touched Ms. Zealy's arm, nor that [plaintiff was] defending [himself] from Ms. Zealy's aggressive position of her body over [plaintiff] and in front of [his] computer;

(3) From the XL-96-025 complaint, the undeserved evaluation of

plaintiff in his annual performance review; and

14

(4) From the XL-96-038 complaint:

(a) A criminal investigation of [plaintiff] was
initiated, on or about June 10, 1996, at DCMC Birmingham.

(b) On June 24, 1996, Ms. Zealy made what [plaintiff]
consider[ed] to be false accusations to Col. Pulscher
that [plaintiff] assaulted her during a June 24, 1996
incident at an elevator at DCMC Birmingham.

(c) On June 24, 1996, [plaintiff was] informed that [he]
was on administrative leave and [was] escorted out of the
building, and told not to come back unless and until []
notified.

(d) On June 1, 1996, Jan Bishop provided what [plaintiff]
consider[ed] to be false information to Col. Pulscher
regarding [plaintiff's] alleged actions.

(e) [Plaintiff] did not receive a response to [his] E-
mail, sent on or about June 10, 1996, which requested
help in providing training to other administrators in
Cost-Price analysis work.

Consistent with this court's prior decisions, *see Sloan v.
Runyon*, CV-96-AR-0264-M (N.D. Ala. Jan. 13, 1997), the court
determines that none of the above incidents constitute "personal
actions" pursuant to 42 U.S.C. § 2000e-16. The Fourth Circuit, in
*Page v. Bolger*, 645 F.2d 227, 233-34 (4th Cir. 1991), *cert. denied*,
454 U.S. 892, 102 S. Ct. 388 (1981), in discussing a disparate
treatment claim, recognized that

[t]he proper object of inquiry in a claim of disparate
treatment under § 717 is whether there has been
"discrimination" in respect of "personnel actions
affecting (covered) employees or applicants for

15

employment . . . ." 42 U.S.C. § 2000e-16(a)(emphasis added). Disparate treatment theory as it has emerged in application of this and comparable provisions of Title VII, most notable § 703(a)(1), <u>42 U.S.C. § 2000e-2(a)(1),</u> <u>has consistently focused on the question whether there</u> <u>has been discrimination in what could be characterized as</u> <u>ultimate employment decisions such as hiring, granting</u> <u>leave, discharging, promoting, and compensating. This is</u> <u>the general level of decision we think is contemplated by</u> <u>the term "personnel actions" in § 717.</u> It is the level focused upon in the major Supreme Court decisions establishing and refining the substantive and procedural elements of individual disparate treatment theory.

\*\*\*

<u>[I]t is obvious to us that there are many interlocutory</u> <u>or mediate decisions having no immediate effect upon</u> <u>employment conditions which were intended to fall within</u> <u>the direct proscriptions of § 717 and comparable</u> <u>provisions of Title VII</u>.

*Id.* at 233 (emphasis added). This approach was expressly adopted

by the Eleventh Circuit in *Ferguson v. Veterans Admin.*, 723 F.2d

871, 872 (11th Cir. 1984), *cert. denied*, 469 U.S. 1072, 105 S. Ct.

563 (1984), and was adopted by reference by the Fifth Circuit in

*Dollis v. Rubin*, 77 F.3d 777, 781-82 (5th Cir. 1995). The Fifth

Circuit noted, "Title VII was designed to address ultimate

employment decision, not to address every decision made by

employers that arguably might have some tangential effect upon

those ultimate decision." *Id.*

None of plaintiff's assertions in XL-96-018, XL-96-019, XL-96-

16

025[3] and similarly none of his allegations noted in paragraphs (a), (b), (d), and (e) of XL-96-038 constitute personnel actions. They were all merely mediate, or possibly even irrelevant steps, toward some possible adverse personnel action. This court similarly believes that while placing a person on administrative leave may be an adverse employment decision affecting a term, condition, or privilege of employment, it is not an ultimate employment decision. Because it is not an ultimate employment decision, but is only mediate, the court finds that allegation (c) contained in XL-96-038, is not a personnel action as contemplated by § 2000e-16.

Because plaintiff has failed to show or allege any adverse personnel action, save his claim for retaliation that he must pursue and is currently pursuing through administrative routes, defendant's motion for summary judgment is due to be granted.

A separate and appropriate order will be entered.

---

[3] Negative employment reviews are not, in and of themselves, adverse employment decisions, let alone personnel actions. *See Gustovich v. AT&T Communications, Inc.*, 972 F.2d 845, 847 (7th Cir. 1992)(*per curiam*). In *Gustovich*, the Seventh Circuit found:

> [Plaintiff's time for filing an EEOC complaint] began to run [] only if a sub-par evaluation is an adverse employment decision, which it is not. Most negative appraisals have nothing to do with age (or other discrimination) but instead reflect poor performance. There is nothing to complain about until a poor rating carries with it a loss of job or pay.

*Id.*

DONE this 18 day of February, 1997.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT COURT